HIRAM S. GOSS

*vs.*

ARTHUR D. KILBY et al. & TRUSTEE.

Cumberland.    Opinion November 18, 1914.

*Assumpsit.    Consideration.    Delivery.    Exceptions.    Nonsuit.*
*Ratification.    Sale.*

The plaintiff sold hay to the defendant, and made one M. his agent to deliver the hay, but not to receive payment, which limitation was known to the defendant. M. delivered the hay and received the pay for it from the defendant.   Part of the money received he placed to the plaintiff's credit in a bank, and the plaintiff has received it.   The rest of it M. kept.   Until suit was brought three months after the plaintiff discovered what had been done, he gave no notice to the defendant of any want of authority in M.   The defendant claims ratification.

*Held:*

1.   The general rule that the principal cannot affirm the agent's doing in part, and repudiate in part does not apply, since the plaintiff was legally entitled in any event to what he received.

2.   The rule that where a principal has full knowledge of the acts of his agent he must dissent and give notice of his dissent within a reasonable time applies only, in this State, where the principal receives a direct benefit therefrom.

3.   A presumption of ratification arising from silence is a presumption of fact, and is ordinarily rebuttable.   The question of ratification in this case should be submitted to a jury.

On exceptions by plaintiff.    Exceptions sustained.

An action of assumpsit to recover a balance due for hay sold and delivered.   The plea was the general issue.   At the conclusion of the plaintiff's evidence, the presiding Justice directed a nonsuit, to which direction the plaintiff excepted.

The case is stated in the opinion.

*Bertram S. Peacock*, for plaintiff.

*Robert E. Randall*, for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

SAVAGE, C. J. Assumpsit to recover for balance of price of hay sold and delivered. The case comes before this Court on exceptions to an order of nonsuit. It is admitted that the hay was sold and delivered to the defendant. The defense is payment to the plaintiff's agent.

The evidence, considered most favorably for the plaintiff, shows that after the hay was bargained the plaintiff went out of the State for several weeks. Before going he told one Millett, who, with his wife, was living in the plaintiff's house on the premises where the hay was stored, that it was understood between him and Mr. Kilby, the defendant, that if he, Kilby, came for the hay while the plaintiff was away, he was to leave the money due with a Mr. Holmes; and he added,—"If Mr. Kilby comes for the hay before it is paid for, don't you let him have it." Kilby's teamsters did come for the hay while the plaintiff was away. Mrs. Millett prevented them from loading it, because not paid for. Thereupon the teamsters procured from Mr. Kilby two checks drawn by him, one for $100 payable to the plaintiff's order, and the other for $60 payable to the order of one Stetson, who assisted in removing the hay. These were delivered to Mr. Millett, who then permitted the hay to be removed. The $100 check was left by Millett at the bank on which it was drawn, and was credited by the bank to the plaintiff's account. The plaintiff has had the benefit of that check, and gives credit for it in this suit. It being ascertained that the $60 check was more than enough to pay the balance due for the hay, which was $51.55, Millett got it cashed at the bank, paid back to the teamsters the difference between the amount due and the amount of the check, and kept the rest himself. And he has kept it ever since. The plaintiff returned to his house about the first of December, 1913. He then learned that the hay had been taken, and heard from the Milletts the story of the checks. He boarded with the Milletts for several weeks. The board went on the account of an old indebtedness from Millett to him. It does not appear that he demanded payment of the $51.55 from Millett, though it does appear that he told Millett that Kilby still owed him $50 for the hay. There is nothing in the case to show that the plaintiff, from the time he discovered the true situation until he brought this

action, ever gave the defendant any notice of any want of authority in Millett, or ever in any manner disavowed or repudiated Millett's acts, except as shown by the above statement. This action was commenced March 4, 1913.

From the history of the case as above stated we think a jury would have been warranted in finding, if not required to find, that Millett was the plaintiff's agent to deliver the hay, but that he was not authorized to receive the pay for the hay. Nor was Millett clothed by the plaintiff with apparent authority, so that the defendant was justified in paying him. Therefore the payment to Millett was unauthorized.

To meet this conclusion the defendant replies that the unauthorized payment has been ratified. There seems to be only two grounds upon which a claim of ratification can be argued. One is that the plaintiff has accepted the benefit of the one hundred dollar check, which was a part of the unauthorized payment. It is the general rule that the principal cannot affirm in part and repudiate in part. He cannot keep what is good and disavow what is bad. He must accept all or none. But this rule is not applicable in a case like this, where the principal is legally entitled in any event to what he received. *Crooker* v. *Appleton*, 25 Maine, 13; *White* v. *Saunders*, 32 Maine, 188; 31 Cyc., 1268. In this case the plaintiff was entitled to the one hundred dollars received in any event. The money received was due him from the defendant, and it would have been useless for him to return it only to recover judgment for it afterwards. *Crooker* v. *Appleton*, supra.

But the defendant strenuously urges that the unauthorized payment of the $60 was ratified, for the reason that the plaintiff did not disavow and repudiate it within a reasonable time after he discovered the truth. The rule relied upon is variously stated. In 1 Chitty on Contracts, 291, it is said that "a principal is bound to disavow the unauthorized act of his agent the first moment the fact comes to his knowledge." It was said by the Court in *Johnson* v. *Wingate*, 29 Maine, 404, that "if a principal does not within a reasonable time after actual notice . . . disapprove of the conduct of his agent, a presumption of assent and ratification will arise." It has many times been held that long acquiescence, or even silence on the part of the principal will afford a presumption of satisfaction of an unauthorized act. And under some circumstances, the presumption may be deemed to be conclusive. Story on Agency, page 299. But ratifica-

tion is a fact.   A presumption of ratification is a presumption of fact. It is ordinarily rebuttable, except under conditions when an equitable estoppel arises, as when one who has been silent when he ought to have spoken must remain silent when he wishes to speak.

But the rule of presumption of ratification from failure to repudiate within a reasonable time was more fully and precisely stated in *School Dist.* v. *Aetna Ins. Co.*, 62 Maine, 330.   In that case the Court said, "The rule that where a principal has full knowledge of the act of his agents he must dissent, and give notice of his dissent within a reasonable time, is stringent in its application only where the agent and those dealing with him are acting in good faith, and the principal receives a direct benefit therefrom."   See also, *Brigham* v. *Peters*, 113 Mass., 139.

In this case the plaintiff received no benefit from the receipt by Millett of the $60 check.   And if the failure for three months to notify the defendant of his disavowal affords any presumption that the plaintiff ratified Millett's act, no equitable considerations appear, which should make the presumption conclusive.   Nor is the inference of ratification so one sided for the defendant as to make it proper to take that question from the jury.

*Exceptions sustained.*